IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WINNERS CIRCLE IMPORTS, LLC,
*et al.*,

      Plaintiffs,

v.                                                    Civil Action No. 2:24-cv-718

WHITNEY'S AUTOMOTIVE
VENTURE ENTERPRISE, LLC,
*et al.*,

      Defendants.


## MEMORANDUM OPINION

This case arises from the attempted sale of three car dealerships in Franklin and Hampton, Virginia. Although the sale of one dealership was consummated, the rest of the deal fell through, and Plaintiffs sued. Defendants now move to dismiss for failure to state claims upon which relief may be granted, and Defendant Samuel Ketner moves to dismiss for lack of personal jurisdiction. The Court previously entered an Order adjudicating the pending motions, Dkt. No. 80, and issues this Memorandum Opinion to explain its reasoning.

## I.      BACKGROUND

The factual allegations forming the basis of Plaintiffs' claims are set out as they are pled in their Complaint, construing the facts in the light most favorable to them. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).[1]

---

[1]     Plaintiffs attach the following to their Complaint: the Asset Purchase Agreement; the First Amendment to Asset Purchase Agreement; a Guaranty signed by Samuel Ketner; and Plaintiffs' Demand for Immediate Payment of Liquidated Damages. Dkt. Nos. 1-2–1-5. The Court considers these documents, finding that (1) they were attached to the Complaint; (2) they were integral to

Plaintiffs[2] owned three car dealerships in Virginia—a Nissan dealership in Hampton, a Chrysler/Dodge/Jeep/Ram dealership in Franklin, and a Chevrolet GMC dealership in Franklin. Seeking to sell the dealerships and other associated assets, Plaintiffs entered into a contract, the Asset Purchase Agreement (the "APA"), with the prospective buyer, Whitney's Automotive Venture Enterprises, LLC ("Whitney's Automotive"). Compl. at ¶¶ 27–28; *see generally* APA, Dkt. No. 1-2.

The APA outlined the parties' various duties, obligations, and expectations under the contract. Included among those expectations was an expectation that neither party would disclose the existence and nature of the contemplated transactions (the "Public Announcements clause"). Compl. at ¶ 59. The Public Announcements clause provides, in part,

> No party hereto shall (a) make any press release or other public announcement relating to this Agreement or the transactions contemplated hereby, without the prior approval of the other parties hereto or (b) otherwise disclose the existence and nature of negotiations regarding the transactions contemplated hereby to any person or entity other than such party's accountants, attorneys, agents and representatives, all of whom shall be subject to this nondisclosure obligation as agents of such party. The parties shall cooperate with each other in the preparation and dissemination of any public announcements of the transactions contemplated by this Agreement.

APA § 6.09. The Public Announcements clause was critical to the APA, because of "common industry knowledge" that when the ownership or management of a dealership changes, often there

---

and relied upon in the Complaint; and (3) that neither party disputes their authenticity. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

[2]    Plaintiffs are Winners Circle Imports, LLC; JCarsIII, LLC; JCarsV, LLC; and Jarryd Carver (the owner/principal of all three dealerships) (collectively, the "Plaintiffs"). Carver is named in the APA as a "Principal" and holds the status of the "Manager" of the dealerships. *See* APA at 1, 29. The APA requires the cooperation of Carver, and he was a signatory to the APA. *Id.* at § 4.15, 39. While not originally named in the Complaint, Defendants moved to join Carver as a necessary party, Dkt. No. 29, which the Court granted, Dkt. No. 74.

is "an exodus of salespeople and dealer staff" which can "have a destabilizing effect on dealership operations and revenues." Compl. at ¶¶ 58–59.

After the parties executed the APA, it became clear that Whitney's Automotive would be unable to close by the agreed-upon deadline. *Id.* ¶ 32. In an effort to facilitate the sales contemplated under the APA, the parties entered into a second contract, the First Amendment to Asset Purchase Agreement (the "Amended APA").[3] *Id.* at ¶¶ 32–35; *see generally* Am. APA, Dkt. No. 1-3. The Amended APA clarified that the parties could close on the purchase of the dealerships in separate transactions and set cut-off dates for each transaction. Compl. at ¶ 37. The sale of the Nissan dealership was contemplated to occur first, with the Amended APA including a liquidated damages clause if the second and third transactions did not go through (the "Liquidated Damages clause"). *Id.* at ¶¶ 38–42. The Liquidated Damages clause provides, in relevant part,

> In the event that Buyer fails to close the purchase of the assets of the . . . Seller due to no fault of Seller, then in such event, in addition to the other remedies granted to Seller herein, Buyer shall be obligated to pay to Seller liquidated damages as a result of the failure to close the purchase of the assets of the . . . Seller in the amount of $750,000.00, the Parties agreeing that in the event of such a default, damages would be difficult to calculate and ascertain and that such sum represents a fair and accurate measure of such damages and such liquidated sum shall be paid in cash within two (2) days after the Cut-Off Date[.]

Am. APA at ¶ 8. In addition to Buyers' obligation to pay liquidated damages, the liquidated damages were jointly and severally guaranteed by Whitney Ketner and secured by a lien in the membership interests of Wave Hampton. *Id.*; Compl. at ¶¶ 43–45. Additionally, Whitney Ketner's husband, Samuel Ketner, signed a Guaranty (the "Guaranty") unconditionally guaranteeing

---

[3]    The Amended APA involved the same Plaintiffs, but the buyers were amended to identify Whitney's Automotive's successors by assignment: Defendants WAVE Franklin – S, LLC ("Wave Franklin – S"); WAVE Franklin – WK, LLC ("Wave Franklin – WK"); and WAVE Hampton – N, LLC ("Wave Hampton") (collectively, the "Buyers"). Compl. at ¶ 36; Am. APA at 1.

"payment when due of any and all indebtedness owed by to [sic] Buyer and/or Whitney Kenter [sic] pursuant to" the Amended APA. Compl. at ¶ 46; Guaranty, Dkt. No. 1-4.

Ultimately, only the sale of the Nissan dealership was consummated. Compl. ¶ 47. After Buyers failed to close on the sale of the two other dealerships, Plaintiffs demanded payment as contemplated by the Liquidated Damages clause. *Id.* ¶¶ 48–53; *see generally* Pl.'s Demand, Dkt. No. 1-5. Buyers and the Ketners refused to pay. Compl. at ¶¶ 54–56. Plaintiffs filed suit, alleging five counts against six entities: Whitney's Automotive; Wave Hampton; Wave Franklin – S; Wave Franklin – WK; Whitney Ketner; and Samuel Ketner.[4] Count I alleges a breach of contract claim against Wave Hampton, Wave Franklin – S, Wave Franklin – WK, Whitney Ketner, and Samuel Ketner; Count II alleges a claim for judgment and foreclosure against Wave Hampton; Count III alleges another breach of contract claim against Buyers (Wave Hampton, Wave Franklin – S, and Wave Franklin – WK); Count IV alleges tortious interference against Samuel Ketner; and Count V alleges statutory business conspiracy against Buyers and Samuel Ketner. Before the Court are each of the remaining Defendants' motions to dismiss for failure to state a claim, Dkt. Nos. 33, 35, 42, 45, and Samuel Ketner's Motion to Dismiss for lack of personal jurisdiction, Dkt. No. 31.

## II.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint to determine whether a plaintiff has properly stated a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" with all

---

[4]    The Court previously granted Whitney's Automotive's 12(b)(6) Motion to Dismiss, Dkt. No. 39, finding that Whitney's Automotive was relieved of all obligations under the APA when it assigned its rights to other entities prior to the events giving rise to the claims here, Dkt. No. 74.

allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.* at 555; *King*, 825 F.3d at 212. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citations omitted) (cleaned up).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Id.*; *see also Twombly*, 550 U.S. at 555 (stating that a complaint "requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action") (cleaned up). A court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks and citations omitted).

A defendant may move to dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). However, if the court resolves the 12(b)(2) motion without conducting an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Bakker*, 886 F.2d at 676 (citation omitted). "This 'prima facie case' analysis resembles the plausibility inquiry governing

motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). "That is, the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* (citation omitted).

When making such a ruling, the court "may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* (citation omitted). However, "a plaintiff cannot rely on 'bare pleadings alone' after a defendant properly challenges personal jurisdiction." *E. Claiborne Robins Co. v. Teva Pharm. Indus.*, No. 3:18-cv-827, 2020 WL 5749936, at *8 (E.D. Va. Sept. 25, 2020) (quoting *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D. N.J. 2002)). "Instead, 'the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence. . . . A plaintiff must respond with actual proof, not mere allegations.'" *Id.* (quoting *Machulsky*, 210 F. Supp. 2d at 537) (alterations in original). "For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true." *Id.* (quotation marks and citation omitted).

## III.    ANALYSIS

### A. Defendants' Rule 12(b)(6) Motions

#### 1. Count I: Breach of Contract against Buyers, Whitney Ketner, and Samuel Ketner

Count I alleges that Buyers breached the APA and the Amended APA by failing to pay Plaintiffs under the Amended APA's Liquidated Damages clause. Compl. at ¶¶ 77–79. In addition,

Count I alleges that the Ketners breached their individual guarantees when they failed to pay Plaintiffs after Buyers refused. *Id.* at ¶¶ 80–85.

To allege a breach of contract claim, a plaintiff must allege the existence of "1) a legally enforceable obligation of a defendant to a plaintiff; 2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004). Defendants collectively levy a series of arguments challenging whether the Amended APA and the guaranty agreements are enforceable and whether the Defendants have breached any provision of the contract. The Court addresses each in turn.

### a. Enforceability

#### 1. Enforceability of the Amended APA[5]

None of the Defendants challenge the validity of the APA, but they do contend that the Amended APA is invalid and unenforceable because it did not comply with the APA's requirements for amendment. The APA states that it "may only be amended, modified or supplemented by an agreement in writing signed by each party hereto." APA at § 10.08. Defendants argue that because Jarryd Carver signed the APA in his capacity as principal, any amendment needed to include his signature in this same capacity. Because Carver only signed the Amended APA as the "Manager" of the dealerships, Defendants contend the APA's requirements to amend are not satisfied. Because of this shortcoming, Defendants argue that no mutuality of assent (i.e., a meeting of the minds) existed. The Court finds Defendants' argument unavailing.

---

[5]    Defendants advance similar arguments across all of their briefings. Each Defendant's argument related to this section can be found as follows: Samuel Ketner's Mem. Supp. at 7–10, Dkt. No. 34; Whitney Ketner's Mem. Supp. at 9–13, Dkt. No. 36; Wave Hampton's Mem. Supp. at 2, 6, Dkt. No. 43; Wave Franklin's Mem. Supp. at 5–9, Dkt. No. 48.

In determining whether mutuality exists, the Court considers "whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007). Thus, when a party's conduct suggests that he intended to assent to a contract, courts will consider the contract binding. *See Galloway Corp. v. S.B. Ballard Const. Co.*, 464 S.E.2d 349, 356 (Va. 1995) (finding that, where one party failed to sign a contract, and that party "undertook to perform the contract according to its terms, an acceptance by performance resulted"); *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 197 (4th Cir. 2014). Here, the parties consummated the sale of the Nissan dealership according to the terms of the Amended APA; such conduct demonstrates that the parties intended to assent to the Amended APA. Compl. at ¶ 47; Am. APA ¶ 6. Accordingly, Carver's failure to sign the Amended APA as principal does not render it unenforceable.

Defendants also challenge the enforceability of the Liquidated Damages clause in the Amended APA, arguing that the clause imposes an unenforceable penalty. A liquidated damages clause becomes an unenforceable penalty "when the damage resulting from a breach of contract is susceptible of definite measurement, or where the stipulated amount would be grossly in excess of actual damages." *O'Brian v. Langley School*, 507 S.E.2d 363, 365 (Va. 1998) (citations omitted). The essence of Defendants' argument is that the liquidated damages sought are equal to the purchase price of the dealerships and therefore grossly exceed Plaintiffs' actual damages. Am. APA at ¶ 3 (noting that the purchase price for the goodwill, furniture, fixtures and equipment, and parts of the Chrysler/Dodge/Jeep/Ram and Chevrolet GMC dealerships was $750,000 each); Am. APA at ¶ 8 (setting the liquidated damages owed by Buyers for the failure to purchase the Chrysler/Dodge/Jeep/Ram and Chevrolet GMC dealerships at $750,000 each).

Defendants' argument is premature. The Court cannot compare the liquidated damages to Plaintiffs' damages, because on the current record, Plaintiffs' total losses are not ascertainable. Plaintiff has not alleged its total losses, and it appears from the record that additional parallel agreements may have existed (which could alter Plaintiffs' damages). *See* APA at § 2.03(d) (noting that the purchased assets under the APA would not include "any real estate owned by [Plaintiffs] or an affiliate of [Plaintiffs], excluding the Dealership Premises to be sold contemporaneously with the Purchased Assets pursuant to the Real Estate Purchase Agreement"). Given that uncertainty, the Court cannot say whether Plaintiffs' damages were ascertainable or whether the liquidated damages were grossly disproportionate to Plaintiffs' losses at the time the clause was written. *See Fifth Third Bank, N.A. v. Int'l Bus. Machs. Corp.,* No. 3:20-cv-33, 2021 WL 508727, at *6 (W.D. Va. Feb. 11, 2021) (declining to find a liquidated damages clause to be an unenforceable penalty where "[d]iscovery has yet to commence, and there is simply insufficient evidence to adequately demonstrate the contracting parties' intent").

Given the allegations in the Complaint, Plaintiffs have sufficiently alleged that the Amended APA is an enforceable contract.

### 2. *Enforceability of the guaranty agreements*

Whitney and Samuel Ketner also challenge the enforceability of their guaranty agreements. Samuel Ketner's Mem. Supp. at 5–6; Whitney Ketner's Mem. Supp. at 6–13. To recover on a guaranty, "the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract." *See McDonald v. Nat'l Enterprises, Inc.*, 547 S.E.2d 204, 207 (Va. 2001). Both Ketners argue that their guaranty agreements are unenforceable because the agreements lacked consideration.

Whitney Ketner also argues that her guaranty fails because it is not a separate contract. These arguments each fail.

First, Whitney Ketner suggests that the guaranty must be in a separate document from the primary contract to be enforceable. Whitney Ketner's Mem. Supp. at 6–7. Virginia courts do not require a separate document for enforceability; recognizing instead that a guaranty is an independent obligation in which "the guarantor undertakes, in writing, . . . to be answerable for the debt, . . . in case of the failure of some other person who is primarily liable to pay or perform." *B.F. Goodrich Rubber Co., Inc. v. Fisch*, 127 S.E. 187, 188 (Va. 1925); *see also*, *e.g.*, *CSE Inc. v. Kibby Welding, LLC*, 887 S.E.2d 789, 798 (Va. App. 2023) (finding both a primary contract and guaranty, contained in the same document, to be enforceable contracts). Accordingly, an independent obligation can exist without being memorialized in a separate document.

Second, Whitney Ketner argues that her guaranty is unenforceable because it lacked consideration. Whitney Ketner's Mem. Supp. at 6–7. Although a guaranty must be "supported by . . . adequate consideration," an agreement to contract with another party constitutes adequate consideration for a guaranty. *CSE Inc.*, 887 S.E.2d at 793 (quoting *Patterson v. Shaver*, 182 S.E. 261 (Va. 1935) (then citing the Restatement (Second) of Contracts, which explains this principle through the following example: "A promises B to guarantee payment of a bill of goods if B sells the goods to C. Selling the goods to C is consideration for A's promise.")). Here, Whitney Ketner promised Sellers she would guarantee payment under the Liquidated Damages clause if Sellers agreed to sell the dealerships to Buyers under the terms of the Amended APA. *See generally* Am. APA. Sellers' agreement to do so is consideration for Whitney Ketner's guaranty. For these reasons, Plaintiffs sufficiently allege that Whitney Ketner's guaranty is enforceable.

Samuel Ketner similarly argues that the Guaranty is unenforceable because it lacked consideration. Samuel Ketner's Mem. Supp. at 5. However, this argument is inconsistent with the plain language of his guaranty agreement, which states that Samuel Ketner received consideration for his agreement in the form of one dollar and "Value Received." Guaranty at 1. Under Virginia law, consideration is "the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made." *Davis v. Davis*, 835 S.E.2d 888, 895 (Va. 2019) (citation and quotation marks omitted). Here, Samuel Ketner contracted to receive something of value—one dollar—which is consideration. For these reasons, Plaintiffs have sufficiently alleged that the Guaranty is enforceable.

Having determined that the Amended APA and both guarantees are valid and enforceable, the Court now addresses the alleged breaches of those contracts.

### b. Plaintiffs state a prima facie breach of contract claim in Count I

As to the alleged breaches of the contracts at issue—the APA, Amended APA, and the Guaranty—Plaintiffs allege that the Amended APA required Buyers to close the transaction on each dealership by a particular cut-off date but failed to do so. Compl. at ¶¶ 37–40. Plaintiffs allege that under the Amended APA, if Buyers failed to close by the relevant cut-off dates due to no fault of Plaintiffs, Buyers were obligated to pay liquidated damages to Plaintiffs in the amount of $750,000 for each failed purchase. *Id*. at ¶ 41. Plaintiffs allege this occurred and that Buyers failed to pay the liquidated damages. *Id*. at ¶¶ 51–52. Plaintiffs further allege that both Ketners guaranteed the liquidated damages amount but failed to pay them. *Id*. at ¶¶ 44–46, 54; Am. APA at ¶ 8; Guaranty at 1.

Buyers and the Ketners argue that the APA included numerous conditions to closing, that the Amended APA did not eliminate these conditions, and that Plaintiffs do not allege that those

conditions were satisfied. Whitney Ketner's Mem. Supp. at 4, 7–12; Samuel Ketner's Mem. Supp. at 6–9, 13; Wave Franklin's Mem. Supp. at 5–7. Defendants contend, therefore, that no obligation to close existed and no breach of the APA, Amended APA, or Guaranty occurred. *Id.*[6]

Plaintiffs offer a different interpretation of the relevant contracts. Essentially, Plaintiffs allege that given the difficulties in closing, the Amended APA changed the structure of the deal by shifting some of the cost of the Nissan dealership to the latter two transactions. *See* APA at § 2.06 (original sales of the Nissan dealership set at $6 million); Am. APA at ¶ 3 (reducing sales price of the Nissan dealership from $6 million to $4.5 million). But given this change, the Liquidated Damages clause was necessary to protect Plaintiffs if Buyers purchased the Nissan dealership but failed to close on the other two dealerships. *See* Am. APA at ¶ 5 (noting that "any adjustment due to the Purchase Price from the sale of the assets of the Nissan Seller will be deferred until the closing of the sale of the assets of the [Chrysler/Dodge/Jeep/RAM] Seller and/or Chevrolet GMC Seller, or the failure thereof"). Because the liquidated damages represented the

_____

[6]    Defendants also argue that the use of the term "default" in the Liquidated Damages clause relates back to the APA's use of that term and therefore requires default as defined in the APA. Defendants' interpretation is not clearly supported by the language of the APA and Amended APA. The Liquidated Damages clause states that liquidated damages are due "in the event of such a default." *See* Am. APA at ¶ 8. The use of this phrase references the event described earlier in the clause, that event being the "Buyer fail[ing] to close the purchase of the assets of the (i) [Chrysler/Dodge/Jeep/RAM] Seller due to no fault of Seller." *Id.*

Additionally, Defendants argue that the closing dates were merely aspirational because the Amended APA states that the parties "shall make every endeavor to close the sale of the assets." *Id.* ¶ 4. Defendants' argument is contradicted by the Liquidated Damages clause requirement that Buyers pay liquidated damages two days after the relevant cut-off dates if they fail to purchase the remaining two dealerships. *Id.* at ¶ 8 ("shall be obligated"). Finally, Defendants argue that because the Liquidated Damages clause permits Plaintiffs to recover liquidated damages and pursue other remedies, the clause is optional and thus unenforceable. Defendants did not raise this argument until their reply, and the Court considers it waived. *De Simone v. VSL Pharm., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022).

balance owed on the *Nissan* dealership, and not the other two dealerships, Plaintiffs contend that the satisfaction of the conditions to closing related to those dealerships is irrelevant.

Given this disagreement, the Court must determine whether the APA and Amended APA "clearly and unambiguously" bar Plaintiffs' claims or whether an ambiguity in the contracts exists. The Court applies Virginia law. *See* APA at § 10.10. A provision is ambiguous if "it may be understood in more than one way or when it refers to two or more things at the same time." *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 668 (Va. 2002) (quoting *Granite State Ins. Co. v. Bottom*, 415 S.E.2d 131, 134 (Va. 1992)); *see also Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *5 (4th Cir. July 7, 2022). Here, the Court finds that the disputed contractual language is ambiguous, insofar as the APA and Amended APA are capable of more than one interpretation. On the one hand, the APA (Section 2.08 and Article VII) appears to require that certain conditions be satisfied to trigger an obligation to close, but on the other hand, the Liquidated Damages clause (Paragraph 8) appears to do away with those conditions precedent. APA at § 2.08 (requiring either "default under the terms of this Agreement by Buyer or Buyer[s'] fail[ure] to proceed to Closing" to trigger remedies under § 2.08(d)); *id.* at Art. VII (listing several conditions that must be satisfied before "[t]he obligations of each party to consummate the transactions contemplated by [the] Agreement" arise; Am. APA at ¶ 8 (requiring liquidated damages where Buyer fails to close on the relevant dealership due to no fault of the seller under § 2.08(d)).

When presented with an ambiguous contractual provision, a district court may not resolve the ambiguity at the motion to dismiss stage. *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim."); *Polykon*

*Mfg. LLC v. Gea Process Eng'g Inc.*, No. 3:23-cv-751, 2024 WL 4183310, at *8 (E.D. Va. Feb. 21, 2024) ("Because both parties' interpretations are reasonable and there exists a fact question as to the interpretation of an ambiguous contract provision, the Court cannot dismiss [plaintiff's] breach of warranty claim."); *Virginia is for Movers, LLC v. Apple Fed. Credit Union*, 720 F. Supp. 3d 427, 436 (E.D. Va. 2024) (same). Accordingly, the Court denies Defendants' motions to dismiss as to Count I.[7]

### 2. Count II: Judgment/Foreclosure against Wave Hampton

Count II of the Complaint brings a claim for judgment and foreclosure against Wave Hampton, seeking enforcement of a security interest in the entity's membership interests. Compl. at ¶¶ 88–93. This claim rests upon language in the Liquidated Damages clause, providing that the "obligations of the Buyer" shall be "secured by a perfected lien in the membership interests of the Nissan Buyer to be delivered by the Buyer to the Seller on the closing of the purchase of the assets of the Nissan Seller." Am. APA at ¶ 8. Plaintiffs allege they are entitled to these assets because of Buyers' breach of the APA and Amended APA. Compl. at ¶¶ 88–92. Wave Hampton argues that

---

[7]     Wave Hampton separately contends that Counts I and III should be dismissed against it because Wave Hampton was identified as the "Nissan buyer" in the Amended APA and that "[a]fter [Wave Hampton] closed on its purchase of the Nissan dealership, [it] had no further executory obligations." Wave Hampton's Mem. Supp. at 4. This argument fails because it is inconsistent with the plain language of the Amended APA, which identifies each of the Wave entities (Wave Hampton, Wave Franklin – S, and Wave Franklin – WK) as successors to Whitney's Automotive, without differentiation. Am. APA at 1. Thus, the Wave entities collectively replaced Whitney's Automotive as the "Buyer" in the APA, assuming all the rights, duties, and obligations of that entity. Similarly, the Amended APA also identifies the collective Wave entities as the "Purchaser," again without differentiation. *Id.* Thus, the APA and Amended APA place collective obligations upon the Wave entities that cannot be disregarded based upon a sole shorthand reference to Wave Hampton. Wave Hampton also argues that Plaintiffs fail to allege any material facts relevant to Wave Hampton. Wave Hampton's Mem. Supp. at 4. This argument also fails because Plaintiffs do allege facts relevant to Wave Hampton. For example, Plaintiffs allege that all three Wave entities conspired with Samuel Ketner to breach the Public Announcements Clause of the APA. Compl. at ¶¶ 58–72.

Plaintiffs failed to sufficiently allege the existence of an enforceable security interest in Wave Hampton. Wave Hampton's Mem. Supp. at 7–9. The Court agrees with Defendant.

Plaintiffs fail to allege that any enforceable security interest was created. "[A] security interest is enforceable . . . if value has been given; the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; *and* . . . the debtor has signed a security agreement that provides a description of the collateral." Va. Code § 8.9A-203(b)(3)(A). A security agreement is "an agreement that creates or provides for a security interest." *Id.* § 102(a)(74). Here, Plaintiffs do not allege that a security agreement was created or executed. Perhaps recognizing this shortcoming, Plaintiffs argue that the Amended APA was the security agreement. Pls.' Omnibus Opp'n at 14–15, Dkt. No. 58. However, this argument is wholly inconsistent with the plain language of the Amended APA. First, the Amended APA does not purport to be a security agreement. Second, the Amended APA is forward-looking, directing that *in the future*, at the closing of the sale of the Nissan dealership, a security interest would be delivered. This language makes clear that the Amended APA did not contemplate that it would serve as the security agreement. *Contrast Cappo Mgmt. V, Inc. v. Britt*, 711 S.E.2d 209, 211–12 (Va. 2011) (finding that a car dealership acquired a security interest when sales contracts provided "[Buyer] *hereby grants* [Seller] a security interest . . . [Buyer] *is giving* [Seller] a security interest. . . .") (emphasis added). And finally, although the Amended APA is signed (specifically by Whitney Ketner in her capacity as the guarantor), it is not signed by any person purporting to sign in their capacity as the assignor of a security interest in Wave Hampton. Am. APA at 5. For these reasons, the Court finds that Plaintiffs have failed to allege the existence of a security agreement and have thus failed to allege an enforceable security interest in the membership interests of Wave Hampton. Accordingly, the Court grants Wave Hampton's Motion to Dismiss as to Count II.

3. Count III: Breach of Contract against Buyers[8]

In Count III, Plaintiffs allege that Buyers breached the APA's Public Announcements clause. Compl. at ¶¶ 94–98. Plaintiffs allege that Buyers, aware of the potential harm Plaintiffs might face if the turnover of the dealership became public before the sales were finalized, through Samuel Ketner, disclosed the pending sale of the two remaining dealerships to Plaintiffs' employees. *Id.* at ¶¶ 58–72. Plaintiffs allege that, as a result, a key employee resigned, and they lost millions of dollars. *Id.* at ¶¶ 70, 72.

Buyers first argue that Plaintiffs do not allege facts that support an inference that Samuel Ketner acted on Buyers' behalf. However, Plaintiffs do allege that Samuel Ketner acted on Buyers' behalf when he disclosed the contemplated transaction. *See* Compl. at ¶ 67 ("Upon information and belief, Samuel Ketner combined with Buyer and disclosed that Buyer would be purchasing [Plaintiffs'] Franklin, Virginia dealerships, for the purpose of willfully injuring [Plaintiffs] by destabilizing the business and operations of [Plaintiffs'] Franklin, Virginia dealerships."). Despite Buyers' protestations, Plaintiffs may allege facts on "information and belief if [they are] in a position of uncertainty because the necessary evidence is controlled by the defendant." *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015) (quotation marks omitted).

Buyers also argue that the disclosure of the sale of the dealerships to Plaintiffs' employees would not constitute a disclosure under the Public Announcements clause because the clause only applies to pronouncements to the public, and "public" cannot reasonably be read to include Plaintiffs' employees. Buyers' argument rests on an incomplete reading of the applicable provision. The Public Announcements clause prevents parties from making a "press release or

---

[8]    Buyers advance similar arguments across their briefings. Buyers' arguments related to this section can be found as follows: Wave Hampton's Mem. Supp. at 5–6; Wave Franklin's Mem. Supp. at 9–11.

other public announcement relating to this Agreement or the transactions contemplated hereby," *and* from "otherwise disclos[ing] the existence and nature of negotiations regarding the transactions contemplated hereby to any person or entity." APA at § 6.09. The language of the clause makes clear that disclosure of the existence of the agreement or the nature of the negotiations to another person, even if not made by press release or public announcement, is prohibited. This is precisely what Plaintiffs allege occurred here.

The Court finds Buyers' remaining arguments lack merit. For these reasons, the Court concludes that Plaintiffs have alleged a breach of Buyers' obligations under the Public Announcements clause and denies Buyers' motions to dismiss as to Count III.

### 4. Count IV: Tortious Interference against Samuel Ketner

Plaintiffs allege that Samuel Ketner tortiously interfered with their employment relationship by disclosing the pending purchase of the remaining dealerships to Plaintiffs' employees for the purpose of harming Plaintiffs' businesses. Compl. at ¶¶ 99–110. To state a claim for tortious interference, a plaintiff must make a prima facie showing of "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damages to the party whose relationship or expectancy has been disrupted." *Nortec Commc'n, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 232 (E.D. Va. 2008) (quoting *Duggin v. Adams*, 260 S.E. 2d 832 (Va. 1987)). If the claims involve an at-will employment contract, a plaintiff "must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods.'" *Id*. (emphasis in original) (citation omitted). Improper methods

include "misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* (citation omitted).

Plaintiffs have sufficiently alleged a claim for tortious interference. Plaintiffs plead the existence of a valid employment relationship between Plaintiffs and their employee, their top sales manager, and a valid business expectancy in his continued employment. Compl. at ¶¶ 27–49, 58–72, 101–02. As a guarantor to the obligations of Buyers and his wife, Samuel Ketner was generally aware of Plaintiffs' employment relationships. *Id.* at ¶¶ 76, 103. Plaintiffs further allege that, in concert with Buyers, Samuel Ketner told employees at both Franklin dealerships that Buyers were going to purchase and operate those dealerships, and that such disclosures were made with the intent of devaluing Plaintiffs' assets and reducing the final sales price. *Id.* at ¶¶ 61–62. This led to the departure of an important employee and the loss of millions of dollars. *Id.* at ¶¶ 70, 72. Finally, Plaintiffs allege this was all done by disclosing insider information—the yet consummated sale of the dealerships—information they allege that Samuel Ketner had reason to know would cause an "exodus of salespeople and dealer staff" and have a "destabilizing effect on dealership operations and revenues." *Id.* at ¶ 60. Given these allegations, Plaintiffs adequately plead their claim.[9]

Samuel Ketner contends that Plaintiffs' tortious interference claim is simply a repackaged version of Plaintiffs' breach of contract claim. The Court finds no flaw with Plaintiffs' pleading because the same conduct can often give rise to different claims. *See Dunn Const. Co. v. Cloney*, 682 S.E.2d 943, 946 (Va. 2009) ("[A] single act or occurrence can, in certain circumstances,

---

[9]    Samuel Ketner correctly notes that Plaintiffs fail to allege whether the employment relationships at issue were at-will. Samuel Ketner's Mem. Supp. at 10–11. This failure does not, however, require dismissal because Plaintiffs allege that Samuel Ketner employed improper methods by disclosing insider information. Compl. at ¶¶ 60–62. As such, Plaintiffs have sufficiently alleged a claim for tortious interference regardless of whether the employment relationships were at-will.

support causes of action both for breach of contract and for breach of a duty arising in tort[.]") (citation omitted). Samuel Ketner also asks the Court to determine whether Plaintiffs' allegations are more plausible than the version of events laid out in his brief. Samuel Ketner's Mem. Supp. at 11, 13, 14. However, courts construe the facts and reasonable inferences in a complaint in the light most favorable to the plaintiff, and a defendant's allegations to the contrary are disregarded. Accordingly, Samuel Ketner's factual arguments must be disregarded at this stage, and the Court denies his Motion to Dismiss as to Count IV.

5. Count V: Statutory Business Conspiracy against Buyers and Samuel Ketner

Finally, Plaintiffs allege that Buyers and Samuel Ketner engaged in a statutory business conspiracy by combining to disclose the pending purchase of the remaining dealerships to Plaintiffs' employees for the purpose of harming Plaintiffs' businesses. Compl. ¶¶ 111–15. Dismissal is appropriate because Plaintiffs fail to meet the heightened pleading standard required for this cause of action.

To plead a claim for statutory conspiracy, "a plaintiff must prove a combination of two or more persons for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 282 (Va. 1993) (quotation marks omitted) (citing Va. Code § 18.2–499). Business conspiracy claims "must be pleaded with particularity, and with more than mere conclusory language." *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (quotation marks omitted). Here, Plaintiffs provide nothing more than unadorned conclusions to support their claim that Buyers and Samuel Ketner conspired to harm their business. Compl. at ¶¶ 67–68. Such pleading without more cannot meet the heightened pleading standards required for a statutory business conspiracy claim. *See People, Tech., and Processes, LLC v. Bowhead Logistics Sols., LLC*, No. 1:17-cv-282, 2017

WL 2264476, at * 3 (E.D. Va. May 23, 2017) (dismissing a business conspiracy claim on a motion to dismiss after finding that Plaintiff failed to "explicitly allege when and where the business conspiracy was formed, what exactly the alleged conspirators agreed upon, and how the alleged conspirators decided to carry out their scheme"). Accordingly, because Plaintiffs "fail to allege particularized facts regarding the concerted action necessary" to support their claim, *id.*, the Court grants Buyers' and Samuel Ketner's motions to dismiss as to Count V.

### B. Samuel Ketner's Rule 12(b)(2) Motion

Finally, Samuel Ketner moves to dismiss the claims against him for lack of personal jurisdiction. Dkt. No. 31. For a federal district court to exercise personal jurisdiction over a defendant, such jurisdiction must comport with the long arm statute of the state where the district court sits and must satisfy the standards of the Fourteenth Amendment's Due Process Clause. *See UMG Recordings, Inc., v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by the Due Process Clause. *See id.* (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009)). As a result, "the statutory and constitutional inquiries merge into one inquiry." *Id.* To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Samuel Ketner argues that his only contact with Virginia was his agreement to guarantee the other Defendants' contractual obligations in the Amended APA. Mem. Supp. at 4–6, Dkt. No. 32. Plaintiffs point out that the Guaranty Samuel Ketner signed pertained to a sale of car dealerships located in Virginia. Pls.' Omnibus Opp'n at 5–7. Additionally, Plaintiffs allege that Samuel Ketner travelled to Virginia and disclosed the contemplated transactions to Plaintiffs'

employees with the intention of disrupting Plaintiffs' business operations and lowering the purchase price of Chrysler/Dodge/Jeep/Ram and Chevrolet GMC dealerships. *Id.* at 7–9. Plaintiffs argue that these actions give rise to specific jurisdiction over Samuel Ketner under the Virginia long-arm statute.

### 1. The Court has personal jurisdiction over Samuel Ketner with respect to Count I

The Virginia long-arm statute provides for the exercise of personal jurisdiction over a defendant "transacting any business" in Virginia, so long as the cause of action asserted "arises from" the business transacted. Va. Code § 8.01-328.1(A). Virginia law only requires a "single act" within the state to confer personal jurisdiction, "which means that even a single act of business can confer jurisdiction provided that it is significant and demonstrates purposeful activity in Virginia." *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004) (quotation marks and citations omitted). That being said, "no bright-line rule exists" regarding when jurisdiction exists and when it does not, although some guidelines have emerged. *Id*. In determining whether personal jurisdiction exists, the Court must consider "the nature and quality of all of a defendant's business contacts with Virginia that underlie the cause of action." *Id*. at 793–94.

The Court concludes that Plaintiffs have made a prima facie showing of "transacting business" for jurisdictional purposes. Samuel Ketner properly notes that the "mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum." *State Bank of Alleghenies v. Hudnall*, 62 F.3d 1415, 1995 WL 469445, at *2 (4th Cir. 1995) (Table). However, that allegation does not fully consider all of Samuel Ketner's contacts with Virginia. As Plaintiffs note, the contracts underlying the Guaranty were to be performed in Virginia and involved property based in Virginia. Further, Samuel Ketner agreed to guarantee the debts of his wife. The familial

relationship is relevant to this inquiry, in that it creates "the potential that the guarantor stood to gain from his [family member's] business success." *See Hudnall*, 62 F.3d 1415, 1995 WL 469445, at *2 (noting that "the presence of a close relative in Virginia whose commercial venture would benefit from execution of the guaranty brought the out-of-state party into a closer relationship with the forum state than might otherwise be the case"). Finally, Samuel Ketner is alleged to have travelled to Virginia to harm Plaintiffs' businesses in the hopes of reducing the purchase price of the Chrysler/Dodge/Jeep/Ram and Chevrolet GMC dealerships. Compl. at ¶¶ 58–67. These allegations, while also giving rise to a separate tort action, are relevant here because the acts directly relate to and implicate the underlying contracts and the Guaranty. *See Goldman*, 337 F. Supp. 2d at 794 (noting that "personal jurisdiction may be conferred for a specific cause of action not only by the acts giving rise to the claim, but also by acts related to the claim itself") (quotation marks and citations omitted). By reducing the purchase price of the dealerships, Samuel Ketner would also necessarily reduce the amount that he agreed to guarantee. Because Plaintiffs allege that Samuel Ketner not only agreed to guarantee the debts of his wife, but also took affirmative steps in Virginia intended to reduce the amount of those debts, the Court finds that there is personal jurisdiction over Samuel Ketner as to Count I.

### 2. The Court has personal jurisdiction over Samuel Ketner as to Count IV

Samuel Ketner also argues that the Court lacks personal jurisdiction over him with regard to Plaintiffs' tortious interference claim.[10] Mem. Supp. at 6–7. However, since the Court has

---

[10]    Samuel Ketner argues that Plaintiffs cannot establish personal jurisdiction over him because he was not present at either the Chrysler/Dodge/Jeep/Ram or the Chevrolet GMC dealership, both located in Franklin, on October 24, 2024. This factual question is a point of intense dispute between the parties, and the affidavits offered in support offer conflicting evidence. *See* Samuel Ketner's Aff. at ¶¶ 4–5, Dkt. No. 32-1; *compare* Hastings Aff. at ¶¶ 5–8, Dkt. No. 57-2, *with* Compl. at ¶ 62. The Court declines to wade into this dispute because there is a separate basis under which personal jurisdiction is appropriate.

personal jurisdiction over Samuel Ketner as to Count I, and Count I and Count IV arise out of the same common nucleus of facts, the Court will exercise pendent personal jurisdiction over Count IV. "The doctrine of pendent personal jurisdiction permits a court to assert personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction if that claim arises out of a common nucleus of operative fact with a claim in the same suit over which the court does have personal jurisdiction." *Parizer v. AJP Educ. Found., Inc.*, No. 1:24-cv-724, 2025 WL 2382933, at *13 (E.D. Va. 2025) (quotation marks omitted) (citing *Combe Inc. v. Dr. Aug. Wolff GmbH & Co. KG Arzneimittel,* 283 F. Supp. 3d 519, 521 (E.D. Va. 2017)). Here, all of the claims derive from the parties' agreement related to the sale of three car dealerships in Virginia and the subsequent failures to close those deals. The witnesses and evidence necessary to the adjudication of Count I will likely overlap with the witnesses and evidence necessary to prove that Samuel Ketner had knowledge of Plaintiffs' business relationships—an element necessary to prove Plaintiffs' tortious interference claim. Because the Court concludes that both claims derive from the same common nucleus of facts, Samuel Ketner's Motion to Dismiss for lack of personal jurisdiction is denied.

## IV.    CONCLUSION

For the reasons stated above, Samuel Ketner's Motion to Dismiss Pursuant to Rule 12(b)(2), Dkt. No. 31, is denied. Wave Hampton – N, LLC's Motion to Dismiss Pursuant to Rule 12(b)(6), Dkt. No. 42, is granted in part, thereby dismissing Counts II and V of the Complaint, and denied in part as to Counts I and III. The Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Samuel Ketner, Dkt. No. 33, is granted in part, thereby dismissing Count V, and denied in part as to Counts I and IV. The Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Wave Franklin – WK, LLC and Wave Franklin – S, LLC, Dkt. No. 45, are granted in part, thereby dismissing Count

V, and denied in part as to Counts I and III. The Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Whitney Ketner, Dkt. No. 35, is denied.

An appropriate order was previously issued. Dkt. No. 80.

/s/

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: October 8, 2025