**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | |
|---|---|
| WINNERS CIRCLE IMPORTS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WHITNEY'S AUTOMOTIVE VENTURE ENTERPRISES, LLC, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-718 |

## OPINION & ORDER

This case involves the attempted sale of three car dealerships. The parties ultimately closed on only one, and in large part neither side suffered a legally cognizable harm when the expected sales of the other two were not completed—or, at least, neither side has summoned evidence to *prove* they were harmed. Nonetheless, the parties have spent more than 18 months litigating 15 contract and tort claims. In this Opinion and Order, the Court declines to engage on most of the parties' disputes, which range from petty to personal. Instead, it resolves their cross-motions for summary judgment in the most efficient manner possible, primarily by identifying elements of each cause of action on which the party with the burden provides no admissible evidence. In the end, only one claim—apparently worth less than $6,000—remains.

## I. BACKGROUND

This case arises from the attempted sale of three car dealerships the plaintiffs used to own. The defendants bought one (a Nissan dealership) but did not secure the financing and manufacturer approval required to purchase the other two (a Stellantis dealership and a GM dealership). The plaintiffs sued on the parties' contract, and several of their claims were dismissed.[1] The plaintiffs now seek summary judgment on all three of their remaining claims[2] and all ten of the defendants' counterclaims.[3] ECF No. 138. The defendants move for judgment as to the plaintiffs' claims only. ECF No. 147.

The following undisputed facts—together with a few claim-specific facts set forth below—are sufficient to enable the Court to decide the motions:

1. Plaintiff-Sellers Winners Circle Imports, LLC, JCars III, LLC, and JCarsV, LLC entered into a contract for Defendant-Buyer Whitney's Automotive Venture Enterprises LLC to purchase a Nissan dealership, a Stellantis dealership,

---

[1] The case was transferred to this Court after the Honorable Elizabeth W. Hanes ruled on the motions to dismiss. *See* ECF Nos. 80 (Order), 82 (Memorandum Opinion).

[2] The plaintiffs filed their amended complaint (ECF No. 113) after Judge Hanes's dismissal (ECF No. 80) of Counts II and V and portions of Counts I and III, but the amended complaint still purports to include the dismissed claims. The plaintiffs appear to understand that the dismissed claims are no longer active. *See* ECF No. 136 at 1 (seeking summary judgment "on all counts set forth in the [] [a]mended [c]omplaint"); ECF No. 138 (arguing for judgment only on the active claims under Counts I, III, and IV).

[3] The Court will refer to the parties according to their designations vis-à-vis the original claims, regardless of which party has the burden on a particular claim (i.e., not as 'counterclaim plaintiff' and 'counterclaim defendant').

and a GM dealership.[4] ECF No. 10 (contract); *see* ECF No. 137, Statement of Facts (SOF) ¶ 1; ECF No. 171 at 2; ECF No. 147, SOF ¶ 1; ECF No. 170 at 4.

2. The parties then amended their agreement. ECF No. 11 (amendment); *see* ECF No. 137 ¶ 1; ECF No. 171 at 2; ECF No. 147, SOF ¶ 2; ECF No. 170 at 4.

3. The defendants completed their purchase of the Nissan dealership. *See* ECF No. 147, SOF ¶ 3; ECF No. 170 at 4.

4. The defendants did not close on the expected purchase of the Stellantis and GM dealerships. *See* ECF No. 138 ¶ 7; ECF No. 171 at 3.

## II. LEGAL STANDARD

A court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do that, the movant must support their

[4] Not all the plaintiffs are sellers with respect to every component of the contract, and not all the defendants are buyers. For the most part, that distinction does not matter here. Therefore, in the interest of narrative clarity, the Court will refer to the defendants collectively unless a distinction among them is legally significant.

assertions as to undisputed facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

If the moving party is successful in the first instance, then the burden "shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial." *Gnik*, 93 F.4th at 200 (citation and quotation marks omitted); *see Celotex*, 477 U.S. at 324. "The facts and all justifiable inferences arising therefrom must be viewed in the light most favorable to the non-movant." *Gnik*, 93 F.4th at 200 (citation omitted). However, if the non-movant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, courts are not required to consider any materials in the record outside what the parties include with their briefing. Fed. R. Civ. P. 56(c)(3).

## III. ANALYSIS

### A. The Plaintiffs' Claims

#### *i. Count I: Breach of Contract — Liquidated Damages*

The defendants are entitled to judgment as a matter of law on the claim that they breached the contract by not paying liquidated damages, because the liquidated

damages provision is unenforceable under Virginia law. The amendment contains an agreement that:

> [I]n the event that [the b]uyer fails to close the purchase of [the Stellantis dealership] due to no fault of [the s]eller, . . . [the b]uyer shall be obligated to pay to [the s]eller liquidated damages . . . in the amount of $750,000.00 . . . within two [] days after the [c]ut-[o]ff [d]ate[.] . . . [If the buyer fails to close the purchase of the GM dealership] due to no fault of [the s]eller, then . . . [the b]uyer shall be obligated to pay to [the s]eller liquidated damages . . . in the amount of $750,000.00 . . . within two [] days after the [c]ut-[o]ff [d]ate[.] . . . [And] in the event the [b]uyer fails to close the purchase both the [Stellantis and GM dealerships,] then the [] aggregate liquidated damages due to [the s]eller by [the b]uyer . . . are $1,500,000.00.

ECF No. 11 ¶ 8.

It is undisputed that the defendants did not close on the purchase of the Stellantis dealership or the GM dealership by the cut-off date. *See* ECF No. 138 ¶ 7; ECF No. 171 at 3. But the defendants assert that the plaintiffs are not entitled to $1.5 million because the liquidated damages provision is an illegal penalty. ECF No. 147 at 15–18.[5]

If "the damages resulting from breach of [a] contract are susceptible of definite measurement," or if "the stipulated damages are grossly in excess of the actual damages suffered by the nonbreaching party," then the provision is "an unenforceable

[5] The parties also hotly dispute—and devote much of their briefing to—who was to blame for the defendants not closing on the Stellantis and GM dealerships. *See* ECF No. 147 at 8–15; ECF No. 170 at 10–13; ECF No. 171 at 3–10; ECF No. 182 at 4–6; 183 at 4–6. Because the amount of liquidated damages provided by the contract is illegal, the Court need not decide whether either party would be entitled to judgment based on the seller's-fault provision.

penalty." *O'Brian v. Langley Sch.*, 507 S.E.2d 363, 365 (Va. 1998). The party challenging the validity of the clause bears the burden to prove that it is unenforceable. *Id.*

Here, the defendants carry that burden by showing that the liquidated damages the plaintiffs seek are equal to the entire value of the two dealerships the plaintiffs retained.[6] The contract recites the value of the Stellantis and GM dealerships as $750,000 each, for a total value of $1.5 million.[7] *See* ECF No. 11 ¶ 3 (purchase price for each to be paid in three installments of $250,000 each). The liquidated damages provision sets up a 'heads I win, tails you lose' proposition, purporting to guarantee the sellers the total purchase price whether they sell the Stellantis and GM dealerships or not. As the plaintiffs would have it, that would result in a 100% windfall. That is plainly unenforceable under Virginia law. *See 301*

---

[6] To be abundantly clear, this decision does not rely on the principle that the liquidated damages provision is unenforceable if the non-breaching party's damages "are susceptible of definite measurement." *O'Brian*, 507 S.E.2d at 365. Here, the harm the plaintiffs suffered from the canceled sale of the GM and Stellantis dealerships may well have been difficult to calculate, so *a* liquidated damages clause may have been appropriate. The problem is that the liquidated damages the contract provides for are plainly grossly disproportionate to that harm, since the plaintiffs retained the assets whose value the provision is intended to recover.

[7] The original contract set the aggregate purchase for all three dealerships at $11 million. ECF No. 10 § 2.05. Though it is not clear on the summary judgment record, the Court has gleaned from earlier proceedings and inspection of the contracts that the parties originally intended for the defendants to purchase the real property associated with all three dealerships but, with the amendment, agreed to lease the real property instead. *See* ECF No. 93 at 29:15–23; ECF No. 11 § 10. That accounts for the dramatic decrease in purchase prices reflected in the new agreement. It does not affect the Court's decision here.

*Dahlgren Ltd. P'ship v. Bd. of Supervisors of King George Cnty. For & on Behalf of Dahlgren Sanitary Dist.*, 396 S.E.2d 651, 653 (Va. 1990) (finding 50% forfeiture "[f]acially . . . a penalty" and refusing to enforce it where the record was devoid of evidence of actual damages); *see also Ameritech Const. Corp. v. Cummings*, 66 Va. Cir. 328, 2005 WL 1875695, at *2 (Va. Cir. Jan. 13, 2005) ("[I]n the recent cases considered by the [Virginia] Supreme Court, ten percent of the total contract price is the maximum amount of liquidated damages that have been upheld as a valid amount.") (collecting cases).

To construe a liquidated damages clause challenged as a penalty, the Court looks to "the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made." *Taylor v. Sanders*, 353 S.E.2d 745, 747 (Va. 1987) (citation omitted). The parties have done a poor job creating a record that fully explains the reasons they entered into the contract amendment. *See, e.g.*, ECF No. 138 at 1–3 (providing a partial narrative, with no evidentiary citations), ECF No. 93 at 29:15–23[8] (explaining, in a hearing on a previous motion, how the parties changed their agreement to provide for real property leases instead of a sale of the Stellantis and GM dealerships along with their real property—but acknowledging that information is "outside of the pleadings").

The most probative admissible evidence properly before the Court is the testimony of the defendants' transactional attorney, who explained that Plaintiff-

---

[8] This Court cites documents—including deposition transcripts—using the pagination assigned by CM/ECF.

Seller Jarryd Carver had two goals associated with the amendment: He "wanted to make sure that if the GM and [Stellantis] store[s] didn't close, [] he still got his Nissan money;" and he "wanted to make sure [Defendant Whitney Ketner] didn't walk on him and leave him with the GM and [Stellantis] stores." ECF No. 137-20 at 12:7–19. The amendment ensured that Mr. Carver "got his Nissan money" by setting forth a three-installment payment plan for the total purchase price, as described in more detail below. *See* ECF No. 11 ¶ 3. But the second goal reveals that the plaintiffs *intended* the liquidated damages provision to function as a penalty: If the defendants "[left Mr. Carver] with the GM and [Stellantis] stores," they would pay the purchase price of those stores but take nothing in exchange. That context confirms that the liquidated damages clause is grossly excessive and bears no relationship to the plaintiffs' real damages.

The plaintiffs do not argue that the liquidated damages are proportional to the actual harm they suffered harm at all because of the defendants' failure to close on the Stellantis and GM properties. Instead, the plaintiffs assert that (1) the $1.5 million is actually a "deferred payment" for the Nissan dealership, ECF No. 170 at 7–10; and (2) the liquidated damages provision cannot be an illegal penalty because the contract says it is not one, *id.* at 9 (quoting ECF No. 11 ¶ 8 ("the [p]arties agree[] that . . . damages would be difficult to calculate and ascertain and that such sum represents a fair and accurate measure of such damages")).

The first argument is obviously wrong on the plain language of the contract. The amendment unambiguously[9] sets the purchase price of the Nissan dealership at $4,500,000, to be paid in installments of $3,500,000; $500,000; and $500,000. ECF No. 11 ¶ 3. The liquidated damages clause does not change that price.

Second, the parties have no power to nullify Virginia law by stating that a contract provision is legal when it is not. *See O'Brian*, 507 S.E.2d at 365 ("The fact that a party enters into a contract containing a liquidated damages clause does not prevent that party from later litigating the validity of the clause."). Nor is the Court required to blindly permit the plaintiffs to have their assets and take payment for them too, just because the contract calls it "fair." ECF No. 11 ¶ 8.

The liquidated damages provision in the parties' contract is grossly disproportionate to the plaintiffs' actual harm, so Virginia law does not permit the plaintiffs to enforce it, and the Court will enter judgment for the defendants on Count I.[10]

---

[9] In their own motion, the plaintiffs appear to ask the Court to construe the liquidated damages clause against the defendants because the defendants drafted the provision. ECF No. 138 at 9 n.2. That principle applies only "[i]n the event of an ambiguity in the written contract." *Drs. Co. v. Women's Healthcare Assocs., Inc.*, 740 S.E.2d 523, 526 (Va. 2013) (citation omitted). There is no ambiguity here.

[10] The defendants also ask the Court to dismiss Defendant WAVE Hampton – N, LLC from Count I. ECF No. 147 at 18. Since Count I fails as to all defendants, the Court will not rule on that dispute separately.

### *ii. Counts III and IV: Contract and Tort Claims Related to Trey Leggett's Resignation*

In Count III, the plaintiffs seek damages because Defendant Samuel Ketner allegedly told employees about the expected Stellantis and GM sales, in violation of a contractual nondisclosure agreement. ECF No. 113 ¶¶ 96–101; *see* ECF No. 10 § 6.09.[11] The defendants are entitled to summary judgment, because the plaintiffs put on no evidence to link the alleged disclosure to their claimed damages.

Under Virginia law, "an essential element in a breach of contract action is that the defendant's breach . . . caused injury or damage to the plaintiff." *Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491, 493 (Va. 2015) (citation omitted). Here, the plaintiffs argue that Mr. Ketner's disclosure led sales manager Trey Leggett to resign from the plaintiffs' company. The defendants contend that the plaintiffs can produce no evidence "connecting Mr. Ketner's alleged disclosure with the end of Mr. Leggett's employment," because the witness they proffer lacks personal knowledge about the reason or reasons Mr. Leggett resigned. ECF No. 183 at 8; *see also* ECF No. 147 at 20–22 (challenging causation and damages generally).

The plaintiffs present no evidence from Mr. Leggett himself about the reason he left the plaintiffs' company. Candidly, it is unclear to the Court why the evidence

[11] The parties disagree about whether Mr. Ketner was acting as an agent of the buyers when he made the operative statements and about whether the employees he spoke to were agents of the sellers. *See* ECF No. 171 at 13–14; ECF No. 182 at 6–7. The Court need not resolve those issues, because the plaintiffs do not carry their burden to show damages caused by the alleged breach. Likewise, the Court need not wade into the question of whether Mr. Ketner knew or should have known that his statements would cause harm to the plaintiffs (or whether that matters either way). *See* ECF No. 147 at 3; ECF No. 170 at 18–19.

of Mr. Leggett's departure did not come directly from the proverbial horse's mouth. Instead for whatever reason, the plaintiffs rely on the word of another employee, Angela Hastings, who speculated that Mr. Leggett left because he "had a lot of uncertainty regarding [his] future" and "felt like [he] had to leave . . . for the best interest of [his] family." ECF No. 169-21 at 4:13–17.

Far from raising a jury question as to a causal link, Ms. Hastings does not even establish that Mr. Leggett heard the alleged disclosure from Mr. Ketner. (She implies it, but any foundation for that fact would be hearsay. *See* ECF No. 169-21 at 4:9–12 (asserting that Leggett "was approached by [Mr.] Ketner and [another individual] in the parking lot of Nissan and (sic: presumably Mr. Ketner) announced that he was buying the dealership."). And Ms. Hastings tacitly concedes that she does not have personal knowledge that 'uncertainty' motivated Mr. Leggett's decision. *See id.* at 4:19–23 ("Q. So how do you know that [Mr.] Leggett left for those reasons that you just said? A. I know for certain that's why [another employee] left.").[12]

To the extent the plaintiffs argue that Ms. Hastings's description of general "'upheaval'" at the Nissan dealership is sufficient raise a genuine dispute here, that

[12] In their own motion for summary judgment, the plaintiffs attempt to rely on the resignation of another employee, Derrick Pendergrass, to substantiate their damages claim under Count III. *E.g.*, ECF No. 138 at 13. They do not do so in response to the defendants' motion. *See* ECF No. 170 (making no mention of Mr. Pendergrass). Therefore, the Court will not consider whether evidence about Mr. Pendergrass's departure could satisfy the elements of the plaintiffs' claim nor whether it is proper for the plaintiffs to raise that theory now. *See* ECF No. 171 at 15 (defendants contending, in their opposition to the plaintiffs' motion, that the Pendergrass theory is impermissible because the plaintiffs did not advance it in their complaint).

argument falls short. ECF No. 170 at 20 (quoting ECF No. 169-21 at 8:12). Without admissible evidence that the upheaval was due to Mr. Ketner's statements and that it affected Mr. Leggett's decision to leave the company, Ms. Hastings's observations are not probative of causation.

Without any evidence of causation, the plaintiffs cannot survive summary judgment on Count III.

Count IV is a claim for tortious interference in the employment relationship between the plaintiffs and Mr. Leggett. ECF No. 113 ¶¶ 102–13. Like a breach of contract action, tortious interference requires proof of causation—specifically, that the alleged interference "induc[ed] or caus[ed] a breach or termination of the relationship." *Schaecher v. Bouffault*, 772 S.E.2d 589, 602 (Va. 2015). For the reasons explained above, the plaintiffs do not demonstrate causation as to Mr. Leggett's departure, so Count IV fails as well.[13]

#### *iii. Attorney Fees*

The plaintiffs claim entitlement to attorney fees arising from any breach of contract by the defendants, regardless of the outcome of this case. ECF No. 138 at 15;

---

[13] The plaintiffs proffered a witness named Kimberly Linebarger to testify "regarding the calculation of damages suffered by [the p]laintiffs as a result of . . . [Mr.] Leggett's separations from [the p]laintiffs' dealerships." ECF No. 142-1 at 1. The defendants moved to exclude Ms. Linebarger's testimony, and the Honorable Douglas E. Miller denied the motion. ECF Nos. 141 (motion), 194 (hearing minutes), 195 (Order). The defendants then filed an objection to Judge Miller's ruling. ECF No. 197. The disputed testimony was only relevant to Counts III and IV of the plaintiffs' amended complaint. Since the Court has granted summary judgment on both those counts without reference to the damages calculation inquiry that Ms. Linebarger addressed, the defendants' objection to Judge Miller's decision to admit that evidence (ECF No. 197) is **DISMISSED AS MOOT**.

*see* ECF No. 10 § 8.03. Because their breach claims fail as a matter of law, the plaintiffs do not make out the factual predicate for an award of attorney fees. *See* Parts III.A.i & ii, *supra*.

## B. Defendants' Counterclaims

### *i. Counts I, II & III: Fraudulent Inducement*

The defendants allege that the plaintiffs induced them to enter the contract by making fraudulent misrepresentations about (1) the value of vehicles in inventory and profitability of the Nissan dealership (Count I), ECF No. 100 ¶¶ 59–65; (2) work in progress, lifetime maintenance packages, and parts inventory (Count II), *id.* ¶¶ 66–72; and (3) recent replacements of operations tools like networks and phones (Count III), *id.* ¶¶ 73–78. None of those claims survive summary judgment, because the defendants produce no evidence that they relied on any of the alleged misrepresentations in choosing to enter the contract. *See Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 489 (Va. 2010) (elements of a fraudulent inducement claim, including "a false representation of a material fact, constituting an inducement to the contract") (citation omitted and alteration removed); ECF No. 138 at 17 (plaintiffs raising this issue as to all three fraudulent inducement claims); ECF No. 171 at 19–24 (defendants arguing only that they can prove the plaintiffs' representations were false).

### *ii. Count IV, VII & IX: Breach of Contract — Misrepresentations, Access & Digital Assets*

The defendants assert that the alleged misrepresentations listed above also violated the parties' contract. ECF No. 100 ¶¶ 79–86 (Count IV). That claim does not

survive, because the defendants do not demonstrate that the misrepresentations caused them any harm. *See Ramos*, 770 S.E.2d at 493.

The defendants point to evidence they say shows "significant write[-]offs of prepaid expenses" the plaintiffs made in order "to hide the losses and misrepresentations from [the d]efendants." ECF No. 171 at 24. At most, that proves that the plaintiffs misstated the Nissan dealership's finances—not that such misinformation harmed the defendants. Likewise, the defendants argue that they have evidence of "lost profits related to the Nissan dealership" and "tax documents" that "show the variability in the profit before and after" sale of the Nissan dealership. *Id.* That might demonstrate the *fact* of the lost profits the defendants claim, but the defendants provide no proof that could enable a reasonable jury to conclude that any decline in profits was "a result of" the plaintiffs' alleged misrepresentations. *Ramos*, 770 S.E.2d at 493. Without any proof of causation, Count IV fails as a matter of law.

The same goes for the defendants' breach of contract claims based on withholding access to dealership premises and records (Count VII) and failure to turn over social media and internet assets (Count IX). *See* ECF No. 100 ¶¶ 108–14, 128–35. Because the defendants point to no evidence to support causation or damages as to those two counts, summary judgment is warranted. *See* ECF No. 171 at 27–30.

#### ***iii. Count V: Breach of Contract — Liabilities to Employees***

In Count V, the defendants assert that the plaintiffs breached § 2.04 of the contract when they failed to pay employees money owed to them before the Nissan dealership sale closed. ECF No. 100 ¶¶ 87–97. The plaintiffs attack the sufficiency of

the defendants' evidence on the damages element only.[14] ECF No. 138 at 26. In response, the defendants produce (1) a spreadsheet that purports to show uncompensated employee PTO and (2) records of $5,757.65 in payments to some of those employees. ECF Nos. 175-7, 175-8.[15] That evidence is sufficient to enable a reasonable jury to conclude the defendants paid money the plaintiffs owed under the contract.[16]

### *iv. Count VI: Breach of Contract — Liabilities to Vendors*

Count VI alleges the plaintiffs failed to pay three vendor invoices as they were obligated to do under § 2.04 of the contract. ECF No. 100 ¶¶ 98–107. The plaintiffs argue that: (1) the defendants did not pay two of the three invoices, so there are no damages as the unpaid ones; and (2) the defendants cannot prove the invoice they did pay was issued before the Nissan dealership purchase closed.[17] ECF No. 138 at 26.

---

[14] Specifically, the plaintiffs do not dispute here—as they do under Count VI—that the defendants could carry their burden to show that the alleged liabilities arose before the closing date.

[15] In their opening brief, the plaintiffs suggest that the defendants' evidence as to damages may be inadmissible. ECF No. 138 at 26. The reply brief appears to abandon that argument. *See* ECF No. 182 at 16. Regardless, the Court finds that the documents the defendants proffer could be admissible and are therefore sufficient to carry the burden at this stage.

[16] The plaintiffs also contend there is no proof that they made misrepresentations to their payroll company. ECF No. 138 at 26; ECF No. 182 at 16. That is immaterial to the breach of contract claim, so it does not justify summary judgment.

[17] Additionally, the plaintiffs argue that they never incurred an obligation to pay the parts bill because the defendants did not present a claim for indemnification under § 8.04 of the contract. ECF No. 182 at 17. Because Count VI fails on other grounds, the Court will not resolve that dispute.

The defendants contend that they should be allowed to proceed on the two invoices they did not pay, because they suffered non-pecuniary harm including "harassment from collection companies [and] disruption of business" associated with [one of the unpaid bills], "inability to transfer security to a new account, and being left unsecured for months." ECF No. 171 at 26; *see* ECF No. 171-15 at 11:3–11. "[R]egardless of how foreseeable non-pecuniary loss flowing from a contractual breach may be, such non-pecuniary injury is not recoverable in a breach of contract claim" under Virginia law. *Smith v. McLaughlin*, 769 S.E.2d 7, 20 (Va. 2015).[18] Therefore, Count VI does not survive as to the two invoices the defendants did not pay.

The remaining basis for Court VI—a $2,800 invoice for vehicle parts, ECF No. 171-15 at 12:17–13:21—fails because the defendants provide no evidence that the liability "ar[ose] prior to the [c]losing [d]ate." ECF No. 10 § 2.04(a). Mr. Ketner testified that "the Nissan store delivered parts for the [plaintiffs'] dealerships in Franklin," ECF No. 171-15 at 12:21–22, and that "[a]fter closing" the plaintiffs "never paid [the defendants'] parts department," *id.* at 13:13–14. That establishes only that *nonpayment* took place after sale of the Nissan dealership. Given that the order was 'for' a dealership that remained in the plaintiffs' possession after the Nissan dealership sold—and without any proof about how soon after the sale the parts or the invoice arrived—the record does not support a finding by a preponderance of evidence that the plaintiffs placed the parts order before the closing date. Therefore, the

[18] This rule "does have an exception," but "it relates only to whether punitive damages are available." *Smith v. McLaughlin*, 769 S.E.2d 7, 20 (Va. 2015). That exception does not apply here.

defendants do not carry their burden, and the plaintiffs are entitled to judgment on Count VI.

### *v. Count VIII: Breach of Contract — Solicitation*

The defendants allege that the plaintiffs breached a non-solicitation agreement by making promises to employees regarding salaries and bonuses, to induce them to leave the defendants' dealership. ECF No. 100 ¶¶ 115–27. The plaintiffs carry the initial burden to show the absence of a genuine dispute as to whether they took any action to "recruit, induce, encourage, or solicit" anyone to change their employment. ECF No. 10 ¶ 4; *see* ECF No. 137-5 at 31:19–32:4 (Mr. Ketner, testifying as the defendants' corporate representative, acknowledging that he "just assum[ed]" that something "inappropriate" happened because employees "[left the defendants'] company and [went] to work for [the plaintiffs']").

In response, the defendants submit the testimony of Mr. Ketner, who claims that Mrs. Ketner and the defendants' "operating partner" witnessed an employee named Jackie receive a call wherein "the seller threaten[ed] to take her sign-on bonus . . . if she came to work for [the defendants]." ECF No. 171-15 at 15:19–16:4. Mr. Ketner's testimony on this point would not be admissible at trial.[19] Without that

[19] Assuming the statements from the seller to Jackie are either non-hearsay under Fed. R. Evid. 801(c)(2) (because they would be offered only to prove their effect on Jackie) or exempted from the hearsay bar under Fed. R. Evid. 801(d)(2) (because they were made by the sellers or their agent), the account of Mrs. Ketner or the operating partner, presented through Mr. Ketner, would be hearsay.

evidence, the record does not support a finding that the plaintiffs solicited employees away from the defendants in violation of the contract.[20]

### *vi. Count X: Breach of Implied Covenant of Good Faith & Fair Dealing*

Finally, the defendants assert a tort claim for breach of an implied covenant of good faith and fair dealing, based on the conduct outlined in their other claims. ECF No. 100 ¶¶ 136–142. While "a duty of good faith and fair dealing exists under the [Uniform Commercial Code] as part of every commercial contract," a breach of that duty gives rise to a contract action only. *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 385 (Va. 1996) (citing U.C.C. § 8.1-203). "Virginia law does not recognize a separate cause of action in tort for a party's breach of the obligation of good faith." *Id.* Therefore, Count X is at most duplicative of the defendants' other contract claims (all but one of which fail at summary judgment). Consistent with the Virginia Supreme Court's decision in *Charles E. Brauer Co.*, the

[20] On the contrary, first-hand accounts from former employees support a conclusion that employees who left the Nissan dealership after the defendants took over did so for reasons unrelated to solicitation from the plaintiffs. One cited a "dramatic" pay cut and "the ambiance at the dealership" after the defendants bought the shop. ECF No. 181-17 at 5:14–25. A second former employee testified she quit working for the defendants because of multiple interactions where Mr. Ketner "winked" at her in a "secluded office" and others where he seemed to deliberately "started walking behind" her "made [her] uncomfortable, and additionally she did not "feel [] secure in [her] position with the company" after another employee [] was let go." ECF No. 181-18 at 5:22–8:12.

Court will dismiss Count X because it merely "duplicate[s]" the sole surviving theory under Count V. *Id.* (upholding trial court's grant of defendant's demurrer[21]).

## IV. CONCLUSION

The plaintiffs' motion for summary judgment (ECF No. 136) is **GRANTED IN PART** and **DENIED IN PART**. The plaintiffs are entitled to judgment on Counts I, II, III, IV, VI, VII, VIII, IX, and X of the counterclaim (ECF No. 100).

The defendants' motion for summary judgment (ECF No. 146) is **GRANTED**. The defendants are entitled to judgment on Counts I, III, and IV of the amended complaint (ECF No. 113).

The defendants' Count V is the only surviving claim, and it appears to be worth just $5,757.65. Therefore, the parties **SHALL** meet and confer and notify the Court on or before December 7, 2026, whether the defendants intend to proceed with their counterclaim. If they do, the Court will order the parties to mediate this matter.

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
November 23, 2026

[21] A demurrer is the Virginia law equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Va. Code § 8.01-273.